UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHN CYBOROWSKI, *et al.*,

                    Plaintiffs,

                                                       Case Number 08-13736-BC
v.                                                 Honorable Thomas L. Ludington

MYRON ENNEST, *et al.*,

                    Defendants.
_____/

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND GRANTING PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO FILE RESPONSE

      On January 23, 2009, Plaintiffs amended their complaint to advance nine contractual, patent infringement, and tort causes of action, arising from Defendants' alleged infringement and misappropriation of a patented device referred to as a rope clamp. Dkt. # 27. On March 30, 2009, certain Defendants moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. # 33. On June 3, 2009, the Court entertained oral argument on the motion. For the reasons stated below, the Court will **GRANT** in part and **DENY** in part the motion to dismiss.

I

      The underlying dispute relates to various entities' development and production of a device known as rope clamp. A rope clamp is used to secure objects in place, *e.g.*, securing cargo in vehicles. In the summer of 1991, in anticipation of manufacturing rope clamps, Plaintiffs John Cyborowski ("Plaintiff Cyborowski") and Robert Reed, Jr. ("Plaintiff Reed") purchased rope-clamp molds, inventory, and other supplies from a third party. On September 16, 1992, Plaintiffs Cyborowski and Reed filed articles of incorporation to form Plaintiff Line and Rope Clamps, Inc. ("Plaintiff LRC") under Michigan law. On December 12, 2009, with the approval of Plaintiffs

Cyborowski and Reed, Defendant Myron Ennest ("Defendant Ennest") purchased common stock in Plaintiff LRC for $3,000.00. Each shareholder held 1,000 of 3,000 outstanding shares. Plaintiff Cyborowski served as president, Plaintiff Reed served as vice-president, and Defendant Ennest served as secretary and treasurer of the Plaintiff LRC.

On December 21, 1992, Plaintiff LRC and CIS Inc. ("CIS"), a Michigan corporation owned by non-party Carl Schwartz ("Schwartz"), executed a joint-venture agreement ("Plaintiff CIS-LRC") to develop, market, and sell rope clamps. Dkt. # 1-6 at 2. The joint venture was "under the control and direction of CIS," with CIS retaining "the sole authority to make all management and operating decisions on behalf of the joint venture . . . ." *Id.* at 4, 5. Apparently, Plaintiff LRC's role in the joint venture was simply to produce the rope clamp. Plaintiff LRC and CIS retained a fifty percent equity share in the joint venture. *Id.* at 4.

On March 8, 1994, Schwartz and five other inventors applied for a patent described as an "apparatus for clamping an elongated flexible member." Dkt. # 1-8 at 1. The inventors designated Plaintiff CIS-LRC as the assignee, but none of the other parties were identified as inventing or owning the device. The application was approved and U.S. Patent 5,408,729 ("Patent 729") was issued on April 25, 1995.

In 1996, the State dissolved Plaintiff LRC for not satisfying filing and fee requirements pursuant to Mich. Comp. Laws § 450.1922. At oral argument, Plaintiffs' counsel represented that the issues were resolved and Plaintiff LRC revived its corporate status.

Notwithstanding that fact, the complaint alleges that in 1998 Defendant Ennest relied on an outside agent to develop a business relationship with the United States Military. In late 2002 or early 2003, Defendant Ennest informed Plaintiffs Cyborowski and Reed that the agent had began

-2-

to negotiate with high-ranking military officials about purchasing a large number of rope clamps. Soon thereafter in February or March of 2003, Plaintiffs allege that Defendant Ennest informed Plaintiffs Cyborowski and Reed that Plaintiff CIS-LRC filed for bankruptcy and the production molds "were picked up by mistake." In April of 2003, Defendant Ennest told Plaintiffs Cyborowski and Reed that an unidentified partner sought to purchase their interest in Plaintiff LRC, but they did not agree. Plaintiffs allege that Defendant Ennest, in response, misappropriated certain proprietary information from Plaintiff LRC's counsel. While not immediately relevant to the issues before the Court, Defendant Ennest explained during oral argument that CIS and Schwartz received $10,000.00 for the assets. He also explained that Schwartz had unsuccessfully invested large amounts of funds in CIS to develop the commercial market for the rope clamp; far larger amounts than Plaintiffs Cyborowski and Reed.

Defendants contend that Defendant Ennest contemporaneously founded Third-Party Defendant Clamp Company, Inc. According to Defendant Clamptech, on April 23, 2003, Clamp Company purchased certain assets from CIS and Schwartz, including CIS's interest in the joint venture, Patent 729, and related equipment. Dkt. # 11 at ¶ 3.

On November 14, 2005, Defendant Clamptech, LLC ("Defendant Clamptech") was formed under Michigan law. Its members include Defendants Mark McKinley ("Defendant McKinley"), Mark Kochevar ("Defendant Kochevar"), Stacy Pastein ("Defendant Pastein"), and Ennest. Defendants suggest that Clamp Company sold and assigned all rights to assets acquired from CIS, including Patent 729, to Defendant Clamptech. Dkt. # 11 at ¶ 4. In addition, Defendant Ennest warranted that Clamp Company was the rightful owner of Patent 729.

Defendant Clamptech registered another rope clamp under U.S. Patent D 556,033 ("Patent

033") on November 27, 2007. The complaint alleges that Defendant Clamptech began to produce a "knock-off" rope clamp, which infringed on Patent 729. Defendants contend that they own Patent 729.

Lastly, Defendant McKinley Technology, Inc. ("Defendant MTI") is also a Michigan corporation that is involved in some unexplained way with rope clamps. Defendants McKinley, Kochevar, and Pastein all served as corporate officers and retained an ownership interest in the corporation. Plaintiff also alleges, without any factual development, that Defendant MTI coordinated with Defendants to participate in the unlawful conduct.

On August 29, 2008, Plaintiffs initiated this action. Dkt. # 1. On January 23, 2009, Plaintiff amended the complaint to allege nine causes of action. Dkt. # 27. Plaintiffs advance the following five causes of action against all defendants: (1) violation of the Lanham Act, codified at 15 U.S.C. § 1125(a)(1); (2) patent infringement in violation of 35 U.S.C. § 271(a); (3) unjust enrichment; (4) misappropriation of a trade secret; and (5) civil conspiracy. *Id.* Plaintiffs also advance the following four causes of action against Defendant Ennest: (1) fraud; (2) violation of Business Corporation Act, codified at Mich. Comp. Laws § 450.1489(1); (3) fraudulent concealment; and (4) breach of fiduciary duty. *Id.* In addition, Defendant Clamptech filed a cross complaint against Defendant Ennest and a third-party complaint against Clamp Company, alleging claims for the following: (1) breach of warranty and (2) misrepresentation. Dkt. # 11-12.

On February 20, 2009, the Court granted a motion by Defendant Ennest's and Clamp Company's attorney to withdraw as counsel of record. Dkt. # 28. Counsel indicated that neither client had satisfied outstanding legal bills. Dkt. # 25. In that order, the Court stayed the matter for sixty days, but no other counsel has appeared on Defendant Ennest's or Clamp Company's behalf.

On March 30, 2009, Defendants filed the instant motion to dismiss. Dkt. # 33. Plaintiffs filed a response brief, to which Defendants replied. Dkt. # 38, 41. The hearing was conducted on June 3, 2009.

II

Defendant relies on the standard set forth in Fed. R. Civ. P. 12(b)(6), which directs the dismissal of claims that do not "state a claim upon which relief can be granted." "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). When deciding a motion under that Rule, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996). "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (quoting *Scheid v. Fanny Farmer Candy Shops*, *Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). *See also Ana Leon T. v. Federal Reserve Bank*, 823 F.2d 928, 930 (6th Cir. 1987) (per curiam) (mere conclusions are not afforded liberal Rule 12(b)(6) review), *cert. denied*, 484 U.S. 945 (1987).

III

Defendants' motion advances two categories of challenges to Plaintiffs' complaint. First,

Defendants challenge the standing or authority of Plaintiffs to bring the suit and their legal responsibility as shareholders of the Defendant Corporations to Plaintiffs. Second, Defendants contest that Plaintiffs state causes of action upon which relief can be granted.

A

i

Defendants contest Plaintiffs Cyborowski's and Reed's standing, as shareholders of Plaintiff LRC, to individually enforce the rights of the corporation. It is well settled in Michigan that "a corporation as entirely separate from its shareholders, even where one person owns all the corporate stock." *Belle Isle Grill Corp., v. City of Detroit*, 666 N.W.2d 271, 279 (Mich. Ct. App. 2003) (citing *Indus. Steel Stamping, Inc. v. Erie State Bank*, 423 N.W.2d 317, 319 (1988)). "The doctrine of standing provides that a suit to enforce corporate rights or to redress or prevent injury to a corporation, whether arising from contract or tort, ordinarily must be brought in the name of the corporation, and not that of a stockholder, officer, or employee." *Id.* (citing *Mich. Nat'l Bank v. Mudgett*, 444 N.W.2d 534, (1989)). To establish standing, a shareholder must identify a duty independently owed to the shareholder. *Id.* at 279-80.

Plaintiffs' complaint nor response brief identifies an individual duty running to each shareholder. Rather, Plaintiffs Cyborowski and Reed suggest that they have standing to advance a derivative suit. Dkt. # 38 at 12 (citing Mich. Comp. Laws § 450.1492a). Indeed, a shareholder may advance a derivative action on behalf of a corporation. Mich. Comp. Laws § 450.1492a. By its nature, a derivative action is one that seeks to enforce a corporation's right that the corporation itself is not protecting. *See* Mich. Comp. Laws § 450.1491a(a). Before proceeding, a shareholder must demand in writing the corporation enforce its rights or demonstrate such a request would be futile.

Mich. Comp. Laws § 450.1493a; *see also Thomas v. Costa*, 2003 WL 460222, *11 (Mich. Ct. App. Feb. 21, 2003).

Here, it is undisputed that Plaintiffs Cyborowski and Reed are officers of the corporation and control two-thirds of outstanding stock. Neither has alleged that a demand was rejected or that such a request would be futile in light of their apparent control. More problematic, however, is that the corporation, Plaintiff LRC, is participating in this suit. For those reasons, its shareholders lack standing to advance the corporation's rights and Plaintiffs Cyborowski and Reed shall be dismissed as parties.

ii

Defendants contend that the joint venture agreement delegated "sole authority" to CIS, or Schwartz, to effectuate "all management and operating decisions," including the decision to enforce Plaintiff CIS-LRC's legal rights. In Michigan, an unincorporated business association is capable of bringing a suit. *See*, *e.g.*, *Davidson v. State*, 201 N.W.2d 296, 298 (Mich. Ct. App. 1972). Defendants argue that the joint-venture agreement confers sole authority to CIS to pursue these rights. They further allege that Schwartz has not in fact authorized the suit. Defendants advance a factual argument, which is premature at the Rule 12(b)(6) stage to give attention.

iii

Defendants also contend that Plaintiff LRC is not a real party in interest because it was dissolved in 1996. *See* Fed. R. Civ. P. 17. A corporation that is dissolved at the time of filing a complaint but rectifies its deficiencies during the course of the litigation also reinstates its legal capacity to pursue its rights. *Thomas v. Costa*, 2003 WL 460222, *10 (Mich. Ct. App. Feb. 21, 2003) (citing *George Morris Cruises v. Irwin Yacht & Marine Corp.*, 478 N.W.2d 693 (Mich. Ct.

App. 1991)). Counsel's representation that Plaintiff LRC reinstated its corporate status mooted Defendants' argument.

iv

Finally, Defendants McKinley, Kochevar, and Pastein argue that Defendant has not alleged facts supporting their individual liability as shareholders or members. "[A] shareholder of a corporation is not personally liable for the acts or debts of the corporation except that he or she may become personally liable by reason of his or her own acts or conduct." Mich. Comp. Laws § 450.1317(4). Likewise, "[A] person who is a member or manager, or both, of a limited liability company is not liable for the acts, debts, or obligations of the limited liability company." Mich. Comp. Laws § 450.4501(3).

In response, Plaintiffs argue that "Defendants created . . . the illusion that they invented and have a right to the rope clamp technology and the right to sell them." The amended complaint alleges "that Defendants manufactured and developed a knock-off rope clamp, which was patented by Patent 033 on November 27, 2007." Dkt. # 27 at ¶ 38. While these allegations may be sufficient to establish a cause of action against the corporation principals, they fall short of providing a basis to pierce the corporate veil or identify personal conduct creating individual liability. The Court will grant the motion in this respect and dismiss all claims advanced against Defendants McKinley, Kochevar, and Pastein.

B

Turning to the substantive allegations advanced in the complaint, Defendants Clamptech and

MTI[1] advance two arguments in support of dismissal.  First, the amended complaint falls short of articulating prima facie causes of action.  Second, Plaintiffs' theory of liability, with respect to the moving Defendants, is predicated on Defendant Ennest misappropriating property of Plaintiff CIS-LRC and providing it to the moving Defendants.  Consequently, Plaintiff's allegations do not implicate conduct by the moving Defendants.  *See* dkt. # 27 at ¶¶ 19-37.

i

Defendants argue that Plaintiffs have not stated a claim for violation of the Lanham Act because it seeks relief for the infringement of a patent, not trademark infringement.  The Lanham Act authorizes civil enforcement under the following circumstances:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> >
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).  "[T]he Lanham Act creates a federal cause of action for trade dress infringement . . . [which] 'involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques.' "

---

[1] As discussed above, the complaint does not establish the legal responsibility of Defendants McKinley, Kochevar, and Pastein as shareholders or identify any conduct as individuals to hold them liable.  Thus, consideration of the remaining arguments advanced in the motion to dismiss will be limited to Defendants Clamptech and MTI.

*Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1578 (Fed. Cir. 1995) (citing *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 831 (11th Cir.1982) and quoting *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980 (11th Cir.1983)).

A prima facie claim under the Lanham Act consists of the plaintiff demonstrating the following elements: "(1) the trade dress is not functional; (2) the trade dress is distinctive in the marketplace and has acquired 'secondary meaning,' thereby indicating the source of the goods; and (3) the trade dress of the accused product is confusingly similar." *Gen. Motors Corp. v. Lanard Toys, Inc.* 468 F.3d 405, 414-15 (6th Cir. 2006) (quoting *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210 (2000)).

The Lanham Act provides that "[n]othing in [15 U.S.C. § 1125] shall be construed to impair, modify, or supersede the applicability of the patent laws of the United States." 15 U.S.C. § 1125(c)(7). Indeed, patent infringement is distinct from a claim for unfair competition under the Lanham Act, with the difference explained as follows:

> Unfair competition law and patent law have long existed as distinct and independent bodies of law, each with different origins and each protecting different rights. The law of unfair competition generally protects consumers and competitors from deceptive or unethical conduct in commerce. Patent law, on the other hand, protects a patent owner from the unauthorized use by others of the patented invention, irrespective of whether deception or unfairness exists.

ROBERT L. HARMON, PATENTS AND THE FEDERAL CIRCUIT § 14.4(c)(i) (2007) (citing *Mars, Inc. v. Kabushiki-Kaisha Nippon Conlux*, 24 F.3d 1368 (Fed. Cir. 1994)). While a claim for patent infringement "is not the unfair competition envisaged" in the Lanham Act, it is possible that "a distinct cause of action for unfair competition may arise in a factual context that also gives rise to a patent infringement claim. *Id.* at § 14.4(c)(ii) (citing *CPG Prods. Corp. v. Pegasus Luggage, Inc.*, 776 F.2d 1007 (Fed. Cir. 1985) and *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660 (Fed. Cir.

1988)). Notwithstanding that possibility, an allegation of a party inequitably obtaining a patent does not give rise to a claim under the Lanham Act. *Id.* (citing *Zenith Elec. Corp. v. Exzec, Inc.*, 182 F.3d 1340 (Fed. Cir. 1999)). "Only nonfunctional product features" are actionable under the Lanham Act; "[p]atent law, not trade dress law, is the principal means for providing exclusive rights in useful product features" *Id.* at § 14.4(c)(iv).

Turning to the allegations in the amended complaint, Plaintiffs' claim under the Lanham Act is predicated on Defendants' alleged infringement of the patent. While the Plaintiffs allege that the alleged infringement will "confuse[], mistake[], or deceive[] [the public] as to origin and sponsorship," dkt. # 27 at ¶ 53, Plaintiffs' Lanham Act cause of action, as pled, is predicated on infringement of protected, functional product features – the proper avenue of relief is the cause of action pursuant to 25 U.S.C. § 271. Thus, the Court will dismiss this cause of action.

ii

Defendants challenge Plaintiffs' claim for patent infringement, asserting that Plaintiffs do not own Patent 729. The amended complaint alleges that Defendants infringed upon Patent 729, which Plaintiffs allege is owned by Plaintiff CIS-LRC. Dkt. # 27 at ¶¶ 10, 63. Federal law prohibits producing, selling, or using any patented invention without authority to do so. 35 U.S.C. § 271(a). Defendants contend that in 2008 CIS sold the disputed patent to Clamp Company, and was later assigned to Defendant Clamptech. While the record may bear this assertion out, it is premature for the Court to evaluate the record pursuant to Fed. R. Civ. P. 12(b)(6).

iii

Defendants request that the Court dismiss the unjust enrichment cause of action because it does not adequately allege a prima facie claim against Defendants Clamptech or MTI. In Michigan,

a prima facie claim of unjust enrichment consists of an allegation that the defendant received a benefit from the plaintiff that would be "inequitable that the defendant retain." *Dumas v. Auto Club Ins. Ass'n*, 473 N.W.2d 652, 663 (Mich. 1991) (citation omitted). "[W]here a third person benefits from a contract entered into between two other persons, in the absence of some misleading act by the third person, the mere failure of performance by one of the contracting parties does not give rise to a right of restitution against the third person." *Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898, 904 (Mich. Ct. App. 2006) (quoting 66 Am. Jur. 2d *Restitution and Implied Contracts*, § 32 (2009)); *see also Estate of McCallum*, 395 N.W.2d 258, 261 (Mich. Ct. App. 1986) ("Even where a person has received a benefit from another, he is liable to pay therefor only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it. The mere fact that a person benefits another is not of itself sufficient to require the other to make restitution . . . .").

The amended complaint alleges that Defendant Ennest received and inequitably retained a benefit from Plaintiffs when he "abscond[ed] with . . . proprietary information" and "Defendant Ennest and his corporations have received unjust enrichment." Dkt. # 27 at ¶¶ 95-96. While these allegations surpass the threshold for stating a claim for unjust enrichment, neither reasonably informs Defendants Clamptech and MTI of their alleged participation. The complaint only alleges that Defendants Clamptech and MTI "have profited financially from their unlawful and fraudulent actions." *Id.* at ¶ 97. Viewed together, the allegations do not illustrate that Defendants Clamptech or MTI engaged in fraudulent conduct.

iv

To state a claim for misappropriation of proprietary information or a trade secret, a plaintiff

must demonstrate the existence of a trade secret, the acquisition of the trade secret in confidence, and the unauthorized use of the information. *Aerospace Amer., Inc. v. Abatement Tech., Inc.*, 738 F.Supp. 1061, 1069 (E.D. Mich. 1990) (citations omitted). "[T]he existence of a 'confidential' or 'fiduciary' relationship is one of the essential elements of a cause of action for misappropriation of trade secrets under Michigan law." *Id.*

According to the allegations, Defendants Clamptech's and MTI's connection to Plaintiffs was through its dealings with Defendant Ennest. The amended complaint does not allege, explicitly or implicitly, the existence of a confidential or fiduciary relationship between Plaintiffs and Defendants Clamptech and MTI. Rather, the allegations indicate that Defendants Clamptech and MTI were the downstream recipients of information inappropriately obtained by Defendant Ennest. This claim shall also be dismissed.

v

"A conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a purpose not unlawful by criminal or unlawful means." *Cousineau v. Ford Motor Co.*, 363 N.W.2d 721, 730 (Mich. Ct. App. 1985). The amended complaint contains limited allegations concerning the conduct of Defendants Clamptech and MTI. For example, Plaintiffs allege that Defendants were aware of Defendant Ennest's breach of a fiduciary duty owed to Plaintiffs and Defendants used the information for their benefit. These allegations are, at best, conclusory in nature and do not adequately allege that Defendants Clamptech or MTI acted in concert with Defendant Ennest.

In the alterative, the civil conspiracy cause of action fails because Plaintiffs have not identified an underlying tort cause of action that Defendants Clamptech or MTI participated. *See*

*Early Detection Ctr., P.C. v. New York Life Ins. Co.*, 403 N.W.2d 830, 836 (Mich. Ct. App. 1987) (a cause of action for civil conspiracy "may not exist in the air; rather it is necessary to prove separate, actionable tort"); *see also Saloka v. Shelby Nursing Center Joint Venture*, 2005 WL 3304596, *8 (Mich. Ct. App. Dec. 6, 2005); *Cent. Contracting, Inc. v. J.R. Heineman & Sons, Inc.*, 2004 WL 2624806, *5 (Mich. Ct. App. Nov. 18, 2004).

IV

Accordingly, it is **ORDERED** that Defendants' motion to dismiss [Dkt. # 33] is **GRANTED** in part and **DENIED** in part. Plaintiffs John Cyborowski and Robert Reed, Jr. are **DISMISSED WITH PREJUDICE** in their entirety for lack of standing. All causes of action advanced against Defendants Mark McKinley, Stacy Pastein, and Mark Kochevar are **DISMISSED WITH PREJUDICE**. Plaintiffs' cause of action for violation of the Lanham Act is **DISMISSED WITH PREJUDICE** with respect to all Defendants. Plaintiffs' cause of action for unjust enrichment, misappropriation of a trade secret, and civil conspiracy are **DISMISSED WITH PREJUDICE** with respect to Defendants Clamptech, Inc. and McKinley Technology, Inc.

It is further **ORDERED** that Plaintiffs' motion for an extension of time [Dkt. # 36] is **GRANTED**. *See* Fed. R. Civ. P. 6(b)(1).

                                            s/Thomas L. Ludington
                                            THOMAS L. LUDINGTON
                                            United States District Judge

Dated: June 11, 2009

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 11, 2009.

                              s/Tracy A. Jacobs
                              TRACY A. JACOBS